UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:04CV-P596-H

JAMES REED STEPHENS                                                      PLAINTIFF

v.

CORRECTIONAL MED. SERVICES *et al.*                          DEFENDANTS

## MEMORANDUM OPINION

Plaintiff filed this civil rights action under 42 U.S.C. § 1983.  The complaint is

before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,*

114 F.3d 601 (6th Cir. 1997).  This case involves many defendants and even more separate

causes of action.  At the preliminary review stage, the Court must accept the allegations as true,

even if they seem questionable.  For the reasons set forth below, the Court will dismiss most of

Plaintiff's claims but will allow a few to proceed beyond initial screening for further

development.

## I. SUMMARY OF CLAIMS

Plaintiff has named seventeen different defendants in his complaint: (1) Correctional

Medical Services, Inc. ("CMS"); (2) Louisville Metro Department of Corrections ("DOC");

(3) Lee Zellar, MSSW at CMS; (4) Ms. Deon, CMS Psych Nurse; (5) Director Detella;

(6) Dr. Mudd, CMS doctor; (7) Nurse Tee, CMS Nurse; (8) Jackie Knowland, CMS Nurse;

(9) Jane Doe, CMS Nurse; (10) Officer Moore; (11) Officer Winkler; (12) Caseworker Maupin;

(13) Officer Whiteside; (14) Caseworker Northington; (15) Caseworker Boyd;

(16) Library/Legal/Caseworker Brenda; and (17) Officer Reid.  During his stay at DOC,

Plaintiff alleges that he suffered numerous constitutional violations by these Defendants.[1]  All of the defendants are sued in both their individual and official capacities except Defendants Moore, Winkler, Boyd and Tee, who are sued only in their official capacities.  Plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1) and (2) *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.

---

[1]The Court will address the specifics of Plaintiff's claims in the analysis section of this memorandum.

2

2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### III.  ANALYSIS

Although Plaintiff's complaint is lengthy, it is fairly well-organized. Accordingly, for the purpose of conducting its initial review, the Court has determined that the most efficient approach is to analyze each claim in the order set forth in Plaintiff's complaint. Before doing so, however, the Court will briefly address Plaintiff's complaint as a whole to the extent it attempts to assert claims against DOC and CMS.

### A.      Claims against DOC and CMS

To state a claim under § 1983, a plaintiff must allege not only violations of rights secured by the Constitution and laws of the United States but must also show that the alleged deprivation was committed by a "person" acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Because DOC and CMS are institutions, not persons, they not amendable to suit under § 1983. *See Floyd v. Emmet County Corr. Facility*, No. 1:06-CV-283, 2006 U.S. Dist. LEXIS 32518 (W.D. Mich. May 23, 2006) ("A correctional facility is not a 'person,' and therefore, is not capable of being sued under the statute [§ 1983].").  Accordingly, even

accepting as true all well-pleaded allegations of the complaint, it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief under § 1983 against DOC and CMS. As such, the Court will dismiss all claims against these Defendants.

**B.      Soap allergy**

In paragraphs 1-3, 71, and 82-100, Plaintiff alleges that Defendants acted with deliberate indifference to a serious medical need in violation of his constitutional rights by failing to properly treat his allergy to the prison body soap and laundry detergent, causing him to experience chronic puss-filled sores all over his body.[2]

Specifically, Plaintiff complains that he notified Defendants about his chronic itching and sores after coming in contact with the soap and laundry detergent in April 2003. Plaintiff complains that he was given some hydrocortisone cream at that time to alleviate itching, but was not taken to the doctor or given different soap or laundry detergent for several months. During this time, Plaintiff continued to experience extreme itching and have open sores on his body and he continued to request medical attention. Finally, he saw a doctor in December 2003, who diagnosed a soap allergy and prescribed "cream, pill and Dove soap." Plaintiff received the Dove soap for the first month. Thereafter, however, the soap order was removed from his chart. Despite his protests about his on-going allergy the nurses "said it was a temporary thing and [he] could not get it again." After Plaintiff complained, Plaintiff's doctor

---

[2]It is not entirely clear whether Plaintiff was being held as a pretrial detainee or serving a sentence as a convicted prisoner at the time of the alleged violations. The Eighth Amendment applies only to convicts, not pretrial detainees. For the purposes of initial review, however, this is largely a distinction without a difference because the Due Process Clause of the Fourteenth Amendment provides pretrial detainees with rights analogous to those under the Eighth Amendment. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

instructed the nurses to re-order the soap.

Plaintiff claims that despite this renewed order, he still did not receive the soap. Specifically, he claims that "on or about 3-22-04 Defendant Knowland refused to take a HSR for itching and soap because they were not going to be filling it anymore." Plaintiff did not receive any more prescription soap until 5-2-04. Plaintiff also alleges that he was instructed by his doctor to wash his own garments and linens in the Dove soap and not to use the prison laundry because he was allergic to the prison laundry detergent. Plaintiff claims he was prevented from doing so because the laundry bucket was taken and because he was without the prescribed soap for extended periods of time. He says that as a result of repeated exposure to the prison soap and laundry detergentt and Defendants' failure to properly treat his allergy, open sores remained active on his body throughout his incarceration and have subsequently developed into scars.

To sustain a cause of action for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The delay in allowing Plaintiff to see a doctor  and Nurse Knowland's apparent inexplicable refusal to provide the Dove soap as prescribed by the doctor, may present such a case. For the purpose of initial review the Court must accept as true Plaintiff's verison of the facts. Accordingly, the Court will allow this claim to proceed for further development against Nurse Knowland and Director Detella, both of whom are named in this section of Plaintiff's complaint, in their individual and official capacities. Plaintiff also indicates in this section of his complaint that a Nurse Doe told him to "make a [special prescription soap] last." However, he does not allege that Nurse Doe refused a later request for

more soap.  As such, Plaintiff has not stated a claim against Nurse Doe in relation to this claim.

**C.     Spider bite**

In paragraphs 4-5, Plaintiff complains about a spider bite he received on July 1, 2003.

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum

state's statute of limitations for personal injury actions.   *Wilson v. Garcia*, 471 U.S. 261, 275-

280 (1985).  Thus, in Kentucky § 1983 actions are limited by the one-year statute of limitations

found in KRS 413.140(1)(a).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

"[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the

injury which is the basis of his action and that a plaintiff has reason to know of his injury when

he should have discovered it through the exercise of reasonable diligence."  *Id.* at 183.  Though

the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the

defense is obvious from the face of the complaint.  *See Haskell v. Washington Township*, 864

F.2d 1266, 1273 (6th Cir. 1988).

Having reviewed Plaintiff's complaint, the Court determines that this claim is time-

barred.  The allegations contained in the complaint concern events that plainly accrued in July

 2003.  Furthermore, the complaint clearly demonstrates that Plaintiff knew of the alleged

violations at the time they occurred.  Plaintiff's complaint was not filed with this Court until

October 20, 2004.  Even if this claim were not time-barred, the Court does not believe that it

states a valid claim for relief.  It is unfortunate that Plaintiff was bitten by a spider.  However,

he has failed to allege that prison officials were deliberately indifferent in allowing the bite to

occur or in treating it afterwards.  He was provided with ointment to put on the bite and has not

alleged that he was denied any requested medical treatment as related to the bite.  Accordingly,

6

the Court will dismiss this claim because it is time-barred and because it fails to state a claim.

**D.    Sick call & examination**

In paragraphs 6-8 and 10-11, Plaintiff complains that the sick call procedure does not allow nurses adequate time to do "any real type of evaluation" and that medical examinations do not provide the inmates with enough privacy.  However, Plaintiff does not allege how these procedures caused him to suffer any injury.  The Court does not find that Plaintiff has sufficiently pled that these alleged violations caused him to suffer any cognizable injury.  As such, the Court must dismiss these claims for failure to state a claim.  *See Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005).

**E.    Defendant Doe's failure to dispense medication on 3-10-04**

In paragraph 9, Plaintiff complains that "on or about 3/10/04 Defendant Doe skipped meds for 1/2 the dorm"  because she became angry at another inmate.  Again, Plaintiff has failed to allege that this incident caused him to suffer any cognizable injury.  It is not even clear what medication, if any, Plaintiff was due to receive on that date.  As such, the Court must also dismiss this claim for failure to state a claim.

**F.    Defendant's Tee's ear cleaning**

In Paragraph 11, Plaintiff complains that Defendant Tee attempted to clean Plaintiff's ears on or about 8-10-2003, which temporarily resulted in Plaintiff not being able to hear in either ear.  Plaintiff further complains that this procedure was performed in front of other inmates.  Plaintiff has sued Defendant Tee in her official capacity only.  If an action for monetary damages is brought against an official of a governmental entity in his or her "official capacity," the suit should be construed as brought against the governmental entity.  *Will v.*

7

*Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).   Thus, Plaintiff's official capacity claim against Nurse Tee is actually against Jefferson County.

"A plaintiff seeking to hold a municipality liable under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  *Id.* at 403-04.  "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Id.* at 404.  "Beyond having to identify 'conduct properly attributable to the municipality itself,'" *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404), a plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Cherrington*, 344 F.3d at 645 (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404) (internal quotation marks omitted).  For purpose of initial review, it suffices to allege, that an individual officer's conduct conformed to official policy or custom.  *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 165 (1993).

Plaintiff's complaint, however, does not allege that Defendant Tee acted in conformance with an unconstitutional policy or custom of county government in cleaning Plaintiff's ears. Rather, the basis of Plaintiff's complaint appears to be that Nurse Tee negligently performed

her tasks. These allegations do not support a § 1983 claim against Defendant Tee in her official capacity. As such, the Court must dismiss this claim.

**G.       Failure to treat Plaintiff's psychiatric condition**

In paragraphs 3, 12-24, and 45-55, Plaintiff complains that Defendants CMS, DOC, Dr. Mudd, Nurse Doen, and Nurse Doe, failed to properly treat Plaintiff's severe anxiety and depression. Specifically, Plaintiff claims that on or about 4-1-2003 he first notified Defendants about his need for psychological treatment and/or psychiatric medications. In total, Plaintiff claims he turned in over 30 HSR request forms seeking treatment for his psychiatric problems in addition to numerous grievances during his incarceration at DOC.

Apparently, Plaintiff had been on some form of unidentified psychiatric medication for anxiety and depression prior to his incarceration that was stopped by Defendants "'cold turkey' without any notice, examination, or even an explanation." Plaintiff further alleges that despite Defendants' knowledge of his extreme anxiety and while in a totally unmedicated state he was placed in a "young and aggressive dorm," where he had to "deal with constant violence, threats, and fear of being hurt." Plaintiff alleges that this aggregated his pre-existing anxiety to the extent that he gave away his food for several days in a row and was unable to sleep. He talked to Nurse Doen about his fears and gave her a copy of a "court ordered psych evaluation" for DOC's records to document his condition. Still, Plaintiff alleges he remained untreated and in the "aggressive" dorm.

In February of 2004, Plaintiff was assaulted by another inmate, which led to his transfer to a different dorm. At that time, he again requested mental health treatment. This time he was moved to a mental health dorm for monitoring and was seen by Dr. Mudd, who after looking at

Plaintiff's prior mental health evaluation stated that it "looked like [plaintiff] would be with them for awhile."  However, Plaintiff alleges that this was the last time he saw Dr. Mudd and that two days later he was inexplicitly moved back to the general population without receiving any mental health treatment or medication.  Plaintiff claims that his untreated anxiety coupled with his placement in the "aggressive" dorm caused him to "be in fear constantly . . . sleep all day and stay awake at night."

As indicated above, to sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 104.  "Medical needs encompass treatment for mental illness."  *Davis v. Oakland County*, No. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. April 7, 1998).  However, an inmate must still allege that his mental health problems constitute a serious medical need.  Plaintiff alleges that he has depression, anxiety, and other psychological problems that were exacerbated by his confinement causing him to lose sleep and refuse food for several days in a row.  Plaintiff further alleges that he felt in a constant state of fear for a prolonged period of time.  Plaintiff has not submitted any medical proof to document his condition.

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  And, in the context of a prisoner § 1983 case, the Supreme Court while recognizing that "courts should not tolerate abusive litigation tactics," has cautioned the lower courts that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts."  *Hill v. McDonough*, --U.S.--, 126 S.

Ct. 2096, 2103, 165 L. Ed. 2d 44 (2006).  Thus, while Plaintiff may ultimately have to submit additional proof such as verifying medical records to support the allegations in his complaint at a later stage in this litigation, *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004), at this very preliminary stage he has alleged sufficient facts to survive initial review as related to this claim, despite the lack of medical proof to document his alleged condition.

Thus, while possibly a close call, the Court will allow this claim to proceed past initial review, but only as to Plaintiff's individual and official capacity claims against Defendant Dr. Mudd and Nurse Doen.  Although Plaintiff mentions a Jane Doe nurse in this portion of his complaint, the only allegations he makes against her is that she once commented that she did not know why they were transferring Plaintiff so late at night.  This is not sufficient to state a deliberate indifference claim against Nurse Doe for failure to properly treat Plaintiff's psychiatric condition.  Plaintiff's claim against Defendant Zellar must also fail for a similar reason.  Plaintiff states that he requested Defendant Zellar to provide him with mental health treatment and that Defendant Zellar responded by moving Plaintiff to the mental health dorm. Plaintiff does not allege that Defendant Zellar played any role whatsoever in Plaintiff's removal from the mental health dorm just two days later.  As such, Plaintiff has failed to state a claim against Defendant Zellar.

## H.    Access to courts and attorney

In paragraphs 25-41 of his complaint Plaintiff alleges that Defendant Brenda continually rejected law request forms for "technical reasons," changed the policies to make it more difficult for inmates to obtain materials, and would not fill requests on 3-18-04; that on 2-6-04 Defendants Brenda and Maupin would not make copies from a book each contending that it was

the other's job; and that Defendants Maupin and Boyd would not allow Plaintiff to contact his lawyer by telephone on 7-25-03 and denied his requests for envelopes and paper.

"In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (noting that "the requirement that an inmate show 'actual injury' derives from the constitutional principle of standing")). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578. Here, while Plaintiff is understandably frustrated with the difficulties he encountered with the legal library and mail system, he has not alleged that these difficulties actually prevented him from meaningfully accessing the courts. As such, he does not have standing to bring such a claim, and the Court must dismiss it.

## I. Indigent packs

In paragraphs 42-44 Plaintiff complains that the commissary bag provided to indigent inmates did not contain all of the items listed in the inmate handbook and that Plaintiff only

received "1 stamped envelope, 2 sheets of blank paper, a miniature soap, miniature pencil, toothpaste, toothbrush, and comb." Plaintiff, however, is not constitutionally entitled to receive every item in the handbook. Prisoners are constitutionally entitled only to the "basic elements of hygiene." *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). Based on Plaintiff's allegations, the Court cannot find that Plaintiff was denied "the basic elements of hygiene." Accordingly, the Court will dismiss this claim for failure to state a claim upon which relief can be granted.

**J.      Overcrowding**

In paragraphs 52, 56-59, 62-64 and 65-67, Plaintiff alleges that overcrowding at DOC has led to several problems including a lack of outside recreation, increased violence, and excessive noise levels at night.

**1.      Recreation**

Plaintiff alleges that Defendant Officers Whiteside and Reid were in charge of taking inmates out for recreation time but that Plaintiff was only permitted outside exercise five times in fifteen months. Plaintiff attributes the lack of outside recreation time to overcrowding. The Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Moreover, it is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without peneological justification, violates Fourteenth/Eighth Amendment guarantees.

However, Plaintiff has not alleged that the deprivation of recreation time caused him to suffer any physical injury. "No Federal civil action may be brought by a prisoner confined in a

13

jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e (e).  As such, the Court must dismiss this claim.[3]

## 2.    Assault

Plaintiff also alleges that the overcrowding led to increased fighting in the dorms and the officers' inability to respond to fights in a timely fashion.  Specifically, Plaintiff alleges that he was beaten by another inmate, James Perry, on or about February 10, 2004.  Plaintiff alleges that he told the Defendant Officers several times before the attack "that he was having extreme difficulties," but that nothing was done to separate him from Mr. Perry.  He further alleges that the alteration was over "before officers even thought about opening the door."  As a general principle, a prison guard has the duty to ensure the "reasonable safety" of inmates.  *See Farmer v. Brennan*, 511 U.S. 825 (1994).  A prison official is liable for failing to protect an inmate from assaults by other inmates when a plaintiff proves the following:  "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

To be certain, "prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another."  *Farmer*, 511 U.S. at 858 (Thomas, J. concurring).  As a result, some level of violence can be unavoidable no matter what

---

[3]As explained in greater detail in section L below, it is possible that Plaintiff might have been able to pursue injunctive relief notwithstanding the lack of physical injury.  However, he did not seek injunctive relief in relation to this claim and he is now precluded from doing so because he is no longer incarcerated at DOC.

precautions are taken and officers cannot be expected to prevent every assault before it occurs or to stop an assault in progress before injuries are inflicted. However, in this case, Plaintiff has alleged that the Defendant Officers knew about Plaintiff's problems with Mr. Perry and had prior knowledge that Mr. Perry was mentally unstable and violent. Even with this knowledge, Plaintiff claims that the Officers failed to supervise Mr. Perry or separate the two men from one another. As a result, Plaintiff claims that Mr. Perry finally followed through on his threats and attacked Plaintiff causing him significant injury (lacerations requiring stitches, facial bruising, and a "busted" lip). Thus, based on the facts alleged the Court will allow this claim to proceed past initial screening for further development as against the Defendant Officers (Moore, Winkler, Whiteside, and Reid).

### 3. Noise

Plaintiff alleges that he had to endure "an abnormally high level of noise at inappropriate times" for close to a year. According to Plaintiff because of the open dorm policy inmates are allowed to do whatever they want at night, and that one group of inmates stays awake all night yelling, playing games, and generally making noise of all types. He also alleges that the television plays at full blast. However, Plaintiff has failed to allege that this "excessive" noise caused him to suffer any cognizable physical injury. Indeed, elsewhere in his complaint Plaintiff alleges that it was fear and anxiety that caused him to stay awake at night, not excessive noise. As such, the Court will dismiss this claim for failure to state a claim. *See* 42 U.S.C. § 1997e (e).

### K. Grievance procedure

In paragraphs 60-61, Plaintiff complains that Defendants failed to follow the grievance

procedure and repeatedly ignored his grievances.  However, there is "no constitutionally

protected due process interest in unfettered access to a prison grievance procedure."  *Walker v.*

*Mich. Dep't of Corr.*, 128 Fed. App. 441, 445 (6th Cir. 2005).  As another court explained:

> Plaintiff's allegation that defendants' failure to respond to his grievances
> does not rise to the level of a violation of his constitutional rights.  There is
> no constitutional requirement to an inmate grievance system.  *See Azeez v.*
> *De Robertis*, 568 F. Supp. 8 (N.D. Ill. 1982); *Buckley v. Barlow*, 997 F.2d
> 494, 495 (8th Cir. 1993); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D.
> Tenn. 1994).  If a state prison system does provide a mechanism, violations
> of its provisions do not deprive prisoners of federal constitutional rights.
> Consequently, ***the failure of defendants to follow the grievance mechanism***
> ***does not in itself give rise to a § 1983 claim.***  *Doans v. Rice*, 831 F.2d 1057
> (4th Cir. 1987).

*Gordon v. Barrow*, No. 7:05-CV-55, 2005 U.S. Dist. LEXIS 17082, *3-4 (M.D. Ga. Jul. 21,

2005) (emphasis added).  Thus, the Court must dismiss this claim.

## L.     Clothing

In Paragraphs 68-72, Plaintiff complains: (1) about the lack of a wash-bucket for Plaintiff

to wash his underwear and linens and the lack of a drying rack; (2) that Plaintiff was left naked

for 6 to 8 hours at a time each time his jumpsuit was laundered; and (3) about the improper

rinsing of his jumpsuit.

The Court does not believe that the lack of a clothes line, drying rack, or wash bucket

states a claim for a constitutional violation.  While these items may have made it more

convenient for Plaintiff to launder his clothing, Plaintiff has not alleged that Defendants

prevented him entirely from laundering his personal items and linens for prolonged periods of

time.  For example, possibly Plaintiff could have washed his items out in a sink or shower.  As

such, the Court will dismiss this part of Plaintiff's claim.  Plaintiff's allegations regarding the

improper rinsing of his jumpsuit are more properly considered as part of Plaintiff's claim that

Defendants failed to properly treat his skin allergies, which is discussed in greater detail above.

This leaves Plaintiff's complaint that Defendants failed to provide the inmates with anything to wear while their jumpsuits were being laundered.  According to Plaintiff, for over a year, each time his jumpsuit was laundered he was forced to sit naked with nothing but a sheet wrapped around his body for 6 to 8 hours until his jumpsuit was returned from the laundry.  The Court is troubled by Plaintiff's allegations that prisoners would be forced to sit naked for hours at a time with nothing to wear but their bed linens.[4]  However, in this case Plaintiff has not alleged that this conduct caused him to suffer any physical injury.  As indicated earlier, under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  *See* 42 U.S.C. § 1997e (e); *Smith v. Bd. of County Comm'rs*, 216 F. Supp. 2d 1209, 1223 (D. Kan. 2002) (dismissing prisoner's Eighth Amendment claim that prison officials did not supply him with clean laundry for failure to allege a physical injury).

This is not to say that if Plaintiff were still incarcerated he would necessarily be forced to endure such treatment without any relief or recourse.  Although not yet addressed by the Sixth Circuit, several other circuits have held that 42 U.S.C. § 1997e(e) does not apply to claims for injunctive relief.[5]  *See, e.g., Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) ("Section 1997e(e) does not prevent a prisoner from obtaining injunctive or declaratory relief."); *Mitchell*

---

[4]In many respects, this allegation is so shocking that it is almost unbelievable.

[5] In *Jarriett v. Wilson*, 414 F.3d 634, 639 n.5 (6th Cir. 2005), the Sixth Circuit reserved deciding this issue for another day: "At oral argument, Jarriett's counsel conceded that Jarriett's claims for injunctive relief were moot, since Jarriett was released from TCI after filing his complaint. We thus need not decide whether 42 U.S.C. § 1997e(e) applies to claims seeking injunctive relief."

17

*v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) ("We also agree with several other courts of appeals that § 1997e(e) does not apply to claims seeking injunctive or declaratory relief.") *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("In the Eighth Amendment context [] the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive Relief."); *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999) (same). Thus, even in the absence of a physical injury it is entirely possible that, if true, these allegations might support an Eighth Amendment/Due Process claim for injunctive relief. *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (noting that inmates have a constitutional right to "adequate" clothing).

While Plaintiff sought injunctive relief as part of his complaint, he is no longer incarcerated at DOC. As such, his claim for injunctive relief is moot. *Lamb v. Bumpus*, 52 Fed. Appx. 740, 741 (6th Cir. 2002) ("Finally, it is noted that plaintiff's claims for injunctive relief are moot because plaintiff is no longer an inmate in the Henry County Jail."). Thus, the Court must dismiss this claim as well.

**M.    Access to Medical Records**

In paragraphs 72-74, Plaintiff alleges that he made a request to copy his medical records on or about 10-17-03, which Defendants denied. Plaintiff explains that Defendants' refusal to provide the records frustrated his ability to file a medical claim against Defendants. A prisoner does not have a constitutional right to view his medical records whenever he pleases. Moreover, the Court does not believe that Defendants' failure to supply the records deprived Plaintiff of meaningful access to the courts. As another court explained in dismissing a similar claim: "In fact, he could have filed his claim, as he has done here, with a short and plain statement of the

facts within his personal knowledge, and obtained the medical records for supporting evidence

through the discovery process."  *Lee v. Wright*, No. 94-CV-012, 1995 U.S. Dist. LEXIS 20187,

*4-5 (N.D. Ind. Nov. 8, 1995).  As such, the Court will dismiss this claim as well.

**N.      Sanitation**

In paragraphs 75-77, Plaintiff complains that Defendants failed to use pesticide to

eradicate fruit flies from the bathroom drains.  Plaintiff does admit, however, that Defendants

would "unclog the drains as needed" in an attempt to rid them of the flies.  While pest

infestation can become sufficiently serious so as to give rise to a deliberate indifference claim,

Plaintiff has not alleged such facts in this case.  While the fruit flies may have been bothersome

at times, Plaintiff has not alleged that they caused him any actual harm or created a threat to his

safety and well-being.  *But cf. Antonelli v.  Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996)

("sixteen months of infestation and significant physical harm" sufficiently implicate the

constitution to defeat a motion to dismiss).

**O.      High-fat diet**

Paragraphs 78-81 of Plaintiff's complaint detail his allegations related to his complaints

about his diet while incarcerated.  Plaintiff complains that he gained approximately thirty-five

pounds while eating nothing but "'state' food served at mealtime."  As a result, Plaintiff was

placed on a "low-fat diet" by prison doctors.  However, Plaintiff complains that the prison

occasionally failed to provide him with a low-fat tray.  Plaintiff further complains that the prison

made several changes in the weekend menu that eliminated his diet/low-fat tray completely for

breakfast.  Based on Plaintiff's allegations it appears that he did receive his low-fat tray for most

meals.  While the occasional difficulties Plaintiff encountered in receiving the tray were no

19

doubt bothersome to him, Plaintiff has not alleged that they actually caused him to suffer any harm or negative side effects.  Thus, overall it appears as if DOC made reasonable efforts to supply Plaintiff with the type of diet prescribed by Plaintiff's doctor and that the majority of time Plaintiff was provided with a low-fat meal tray.  The fact that Plaintiff may been served regular food on a few occasions without any apparent harm to his health does not rise to the level of a federal constitutional claim.  As such, the Court will dismiss this claim for failure to state a claim.

## IV.  CONCLUSION

To summarize, on initial review the Court is dismissing all of Plaintiff's claims except his Eighth/Fourteenth Amendment claims that:  (1) Defendants Knowland and Detella acted with deliberate indifference to a serious medical need by failing to treat Plaintiff's allergy to the prison body soap and laundry detergent; (2) Defendants Dr. Mudd and Nurse Doen acted with deliberate indifference to a serious medical need by failing to treat Plaintiff's psychiatric condition; and (3) Defendant Officers Moore, Winkler, Whiteside, and Reid failed to reasonably protect Plaintiff from assault by Mr. Perry.  These claims will proceed against each of the specified Defendants in his/her individual and official capacities, except Defendants Moore and Winkler who were sued only in their official capacities.

The Court will enter a separate Scheduling Order governing the development of the remaining claims and will enter a separate Order dismissing all other claims.  In permitting the various claims listed above to proceed against the specified Defendants, the Court passes no

judgment on the merit and ultimate outcome of the action.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4412.008